```
                    UNITED STATES DISTRICT COURT
                             FOR THE
                       DISTRICT OF VERMONT
```

TEXTRON FINANCIAL CORPORATION,   :
                                 :
    Plaintiff,            :
                                 :
    v.                    :   Case No. 2:08-cv-254
                                 :
STEVEN PLAUSTEINER and SUSAN     :
PLAUSTEINER,                     :
                                 :
    Defendants.           :

## OPINION and ORDER

In this action to enforce the personal guaranty of a receivables loan, Plaintiff Textron Financial Corporation ("Textron") seeks summary judgment against Defendants Steven and Susan Plausteiner. For the reasons that follow, the motion (Doc. 17) is **granted.**

### Background

The following facts are presented in the light most favorable to the Plausteiners as the non-moving parties. Steven and Susan Plausteiner are the majority owners of Snowdance LLC ("Snowdance"), the owner and operator of the Ascutney Mountain Resort ("Ascutney") in Brownsville, Vermont. Snowdance also operates a time share project at Ascutney. Textron, a commercial finance company, made a receivables loan to Snowdance in May 2001 for an aggregate original maximum principal amount of $7,000,000.00. Snowdance executed a loan and security agreement ("LSA") in connection with the loan. The receivables loan is

secured by Snowdance's timeshare notes receivable, an assignment of leases and rents, and a second mortgage on Ascutney's real property.  On October 1, 2006 the Plausteiners entered into a Receivables Guaranty Agreement ("RGA") in which they jointly and severally guaranteed payment of the principal and interest on the receivables loan.

Under the terms of the LSA, Snowdance could draw advances based on the amount of eligible timeshare receivables securing the loan.  Textron valued the eligible timeshare receivables in a Borrowing Base Report, which showed month to month variation, sometimes a deficit.  Textron routinely accepted the variation of the value of the timeshare receivables from month to month.

On May 8, 2008, the principal amount of Snowdance's receivables loan obligation was $1,788,267.00, but its receivables borrowing base was $1,762,824.00.  Under the terms of the LSA, this triggered Snowdance's obligation to notify Textron and make a mandatory receivables prepayment in the amount that its obligation exceeded its borrowing base, or $25,443.00.  Snowdance did not give notice of or make such a payment, and Textron deemed this a default under Section 9.1(a)(iv) of the LSA, which defined an event of default as "failure to make any Mandatory Receivables Prepayment when due, whether by payment of money or addition of Eligible Note Receivables."  Prior to May 2008, Textron had never declared a default based on a deficit in

2

the Borrowing Base Report.

In March 2008, the holder of the first mortgage on Snowdance's real estate, PRIF Ascutney, LLC ("PRIF"), commenced a foreclosure action in the Superior Court for Windsor County, Vermont. Textron was named a defendant based on its subordinate real estate mortgage. Textron considered this event a default under LSA Section 9.1(i), which defined an event of default as including "any default by the Borrower or the Guarantor in the payment of indebtedness for borrowed money." Textron filed a cross-claim for foreclosure in the Windsor County case. Snowdance was able to reduce the PRIF indebtedness from more than $4 million to $850,000.00. The parties in the foreclosure action stipulated to a stay of proceedings until October 1, 2009.

According to Section 9.2(a) of the LSA, in the event of a default Textron could declare the entire amount of Snowdance's obligation immediately due and payable. On May 8, 2008 Textron delivered written notice to Snowdance and the Plausteiners of these two events of default under the LSA, declared the entire principal balance of the loan and all accrued interest immediately due and payable, and demanded immediate payment in full. The Plausteiners do not dispute that they received the notice. From May 8, 2008 until at least the time of filing its motion for summary judgment, Textron has continued to collect payments and apply them to the receivables loan. Efforts to

3

resolve the issues between Snowdance and Textron failed, however, and this action to enforce the guaranties followed.

Textron seeks summary judgment that the Plausteiners are obligated to pay the receivables loan and other related indebtedness under the RGA.  In opposition the Plausteiners argue that summary judgment is unwarranted because material facts are disputed concerning whether there was a default on the underlying receivables loan, specifically whether Textron waived its right to declare a default under the LSA, and whether the PRIF litigation constitutes an event of default under the LSA.  They do not dispute that they are liable under the RGA if the receivables loan is now due and payable.

**Discussion**

Summary judgment should be granted if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *see, e.g., Bronx Household of Faith v. Bd. of Educ. of the City of New York*, 492 F.3d 89, 96 (2d Cir. 2007).  The existence of a factual dispute will defeat summary judgment only if it is material, i.e., if it might affect the outcome of the suit under the governing law.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The Plausteiners contend that genuine disputes of material fact exist concerning whether either event of default occurred.

4

They argue that Textron waived strict compliance with the prepayment terms of the LSA through its course of dealing with Snowdance, and that Textron has not established that Snowdance defaulted under Snowdance's agreement with PRIF.

A knowing and voluntary relinquishment of contractual rights may result in a waiver of those rights. *Lemnah v. Am. Breeders Serv., Inc.*, 482 A.2d 700, 706-77 (Vt. 1984). "Such a waiver may be express or it may be manifested by conduct." *Id.* at 706. The Plausteiners maintain that over the past seven years Textron allowed fluctuations in the ratio of the receivables borrowing base to the outstanding principal balance and shortfalls in the receivables borrowing base, and by this course of dealing waived its right to enforce the provisions of the LSA that make it a default for Snowdance to allow the receivables borrowing base to fall below the loan balance without pledging additional receivables or paying down the loan.

Textron does not dispute that there have been shortfalls in the past, but claims that previous shortfalls were always addressed within a short period of time. By May 2008, Snowdance had experienced six months of shortfalls, and foreclosure against its real estate had commenced. Textron argues that waiver cannot be inferred from these circumstances.

Regardless of whether these differing views rise to the level of a genuine dispute of material fact precluding summary

5

judgment on the shortfalls issue, there is no genuine dispute concerning whether Snowdance defaulted on its obligation to PRIF.

Section 9.1(i) of the LSA provides that an "Event of Default shall exist . . . [if Snowdance defaults] "in the payment of indebtedness for borrowed money . . . whether or not such default has been waived by the holder of such indebtedness." LSA § 9.1(i) (Doc. 18, Ex. 1). The Plausteiners do not dispute that PRIF filed a foreclosure action against Snowdance and Textron in March 2008. *See MFW Assocs., LLC v. Snowdance, LLC*, No. 175-3-08 Wrcv (Vt. Super. Ct. filed March 10, 2008).[1] The complaint alleged that Snowdance defaulted on its payment obligations pursuant to the terms of a note and mortgage it executed in favor of PRIF. *See* Compl. ¶ 12 (Doc. 26, Ex. 1). Although Snowdance denied the allegation in its Answer dated April 18, 2008, *see* Answer (Doc. 26, Ex. 1), Snowdance and the Plausteiners executed a Forbearance Agreement dated June 30, 2008, in which they "expressly recognize[] and acknowledge[] that [they] are in default . . . as a result of [their] failure to pay the indebtedness owed to [PRIF]." *See* Forbearance Agreement § 2(b)(Doc. 26, Ex. 2); *see also* Amendment to the Forbearance Agreement § 3 (acknowledging default as a result of failure to pay indebtedness owed to MFW Associates, LLC) (Doc. 26, Ex. 3). That PRIF, and its successor MFW Associates, LLC, agreed to

---

[1] MFW Associates, LLC is the successor and assignee of PRIF.

forbear from prosecuting its claims based on the defaults does not create a genuine issue as to whether Snowdance defaulted on the PRIF obligation.

Moreover, Section 9.1(i) states that the borrower's default under another agreement will constitute an event of default under the LSA "whether or not such default has been waived by the holder of such indebtedness." LSA § 9.1(i). Thus, even if the forbearance agreements were deemed to waive the default under the PRIF obligation, the LSA specifically provides that such a waiver would not affect the declaration of an event of default under the LSA.

The Plausteiners also argue that Section 9.1(i) should not apply where a contested foreclosure action has been stayed; rather Section 9.1(g) involving final judgments should apply. Section 9.1(g), entitled "Judgment," provides that an event of default exists if a "final judgment or judgments for the payment of money, the aggregate of which exceeds $50,000, shall be outstanding against one or more of the Borrower and the Guarantors and any of such judgments shall have been outstanding for more than 30 days from the date of its entry and shall not have been discharged in full or stayed." LSA § 9.1(g).

Sections 9.1(g) and 9.1(i) define separate and distinct events of default, as indicated by the prefatory language of Section 9.1: "an Event of Default shall exist under this

7

Agreement if *any* of the following events or conditions shall occur and be continuing . . ." LSA § 9.1 (emphasis supplied). The plain language of Section 9.1(g) precludes its application to Snowdance's situation; Textron could not declare an event of default under Section 9.1(g) because no final judgment or judgment exists.

The plain language of Section 9.1(i) does apply, however. *Any* default by Snowdance in the payment of indebtedness for borrowed money is an event of default; no judgment is required under this section, and a waiver of default under another agreement, whether by virtue of a stay or otherwise, will not avoid an event of default. LSA § 9.1(i).

It is not, as the Plausteiners argue, stayed "litigation matters" that do not constitute an event of default under Section 9.1(g), but stayed "final judgments." There is no basis for concluding that Section 9.1(g) rather than Section 9.1(i) applies, or that the parties somehow intended the specific language concerning final judgments in Section 9.1(g) to apply to any stayed litigation.

Because there is no genuine issue of material fact concerning whether Snowdance defaulted under its agreement with PRIF, which constituted an event of default under Section 9.1(i) of the LSA, Textron is entitled to summary judgment. The Plausteiners have offered no other opposition to Textron's

8

acceleration of the full loan balance under the LSA or to the enforcement of the terms of the RGA.  Accordingly, the Plausteiners are liable for the full balance owed under the receivables loan.

    Dated at Burlington, Vermont this 11th day of August, 2009.


                        <u>/s/ William K. Sessions III</u>
                        William K. Sessions III
                        Chief Judge